———

No. 26-1272

———

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

SOSCIA HOLDINGS, LLC; STRUCTURES AT JOHNSON'S POND, LLC; BOATING AT JOHNSON'S POND, LLC; WATERFRONT AT JOHNSON'S POND, LLC; COMMON AREA AT JOHNSON'S POND, LLC; LAND AT JOHNSON'S POND, LLC,
*Plaintiffs – Appellees,*

v.

TOWN OF COVENTRY, by and through its Finance Director Robert J. Civetti, in the Individual and Official Capacity; HILLARY V. LIMA, in the Individual and Official Capacity as Council President; JAMES E. LEBLANC, in the Individual and Official Capacity as Council Vice President; JOHNATHAN J. PASCUA, in the Individual and Official Capacity as Councilmember; ALISA M. CAPALDI, in the Individual and Official Capacity as Councilmember; KIMBERLY A. SHOCKLEY, in the Individual and Official Capacity as Councilmember; JENNIFER M. LUDWIG, in the Individual and Official Capacity as Councilmember; DANIEL O. PARILLO, JR., in the Individual and Official Capacity as Town Manager; STEPHEN J. ANGELL, ESQ., in the Individual and Official Capacity as Town Solicitor,
*Defendants – Appellants*

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
(Case No. 1:25-cv-00274-MRD-AEM)

———

## APPELLEES' OBJECTION TO MOTION TO EXPEDITE APPEAL

The Plaintiffs-Appellees in the above-captioned matter, Soscia Holdings, LLC

*et al.* ("Appellees") hereby object to the Motion to Expedite Appeal filed by the

Defendants-Appellants in the above-captioned matter, Town of Coventry (the "Town") *et al.* ("Appellants").

**INTRODUCTION AND BACKGROUND**

The Appellees expressly incorporate the Introduction and Background as stated in their Motion to Dismiss Appeal filed herewith.

The Appellees respectfully request that the Court decide their Motion to Dismiss Appeal based upon lack of appellate jurisdiction and Article III standing before entertaining the Appellants' Motion to Expedite Appeal. In the event the Motion to Expedite Appeal is reached, the Appellants' Motion should be denied for the following reasons.

**ARGUMENT**

**A. The Appellants' Appeal is not an "action for temporary or preliminary injunctive relief" that mandates "expedited consideration" by the Court.**

The Appellants rely upon 28 U.S.C. § 1657(a) for their attempt to expedite this Appeal. Motion to Expedite Appeal, at 9–10. The Appellants place significance in the language of § 1657(a) indicating that "the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief." *Id.*

First, the Appeal before this Court is not an "action for temporary or preliminary injunctive relief." *Id.* Instead, it is an Appeal of a Memorandum and Order where the District Court "decline[d] to adopt Plaintiffs' requested relief and, instead, enjoin[ed] the Superior Court from proceeding with the scheduled

adjudication of the just compensation issue pending before it in KM-2024-0578."

Mem. & Order, ECF No. 60, at 33. Therefore, this statute does not apply to this

Appeal, and in fact, it does not appear that this Court has ever applied it to an appeal.

The First Circuit has utilized the following definition for a "preliminary

injunction":

> For a **preliminary injunction**—as indicated by the numerous more or less synonymous adjectives used to label it—is, **by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its as-for-the-time-beingness**. It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began.

*Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 15 (1st Cir. 2009)

(quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953))

(emphasis added). The Memorandum and Order at issue does not fit the bill.

The Memorandum and Order was issued "**pursuant to this Court's

authority under the All Writs Act and consistent with exceptions to the Anti-

Injunction Act**" (as opposed to Rule 65), **and it is not directed to the Appellants**.

*See also* Motion to Dismiss Appeal, at 9–15 (arguing the Memorandum and Order

is not even an "injunction" for purposes of the Appellants' ability to take an appeal

of an "interlocutory order" by right under 28 U.S.C § 1292(a)(1)).

Further, Congressional intent behind 28 U.S.C. § 1657(a) suggests that Congress intended to ensure that **movants** for temporary and injunctive relief could obtain a hearing on their motion before it was too late—not provide appellants with an automatic right to expedite an appeal of a resulting order. H.R. REP. 98-985 (explaining that "the requirement that such actions be 'expedited' . . . should, of course, be understood to mean that applications for temporary restraining orders and preliminary injunctions must at least be heard and decided in time to prevent the harm threatened if the relief requested is found to be warranted.").

Therefore, the Appellants are not permitted to automatically advance up this Court's calendar by labeling their Appeal an "action for temporary or injunctive relief." 28 U.S.C. § 1657(a). They have requested **no such relief** from this Court, the relief issued by the District Court was **not even directed to the Appellants**, and the Order **does not concern any rights held by the Appellants**, nonetheless any that could be irreparably harmed without expedition. *See also generally* Motion to Dismiss Appeal.

**B. The Appellants have shown no "good cause" for expediting the Appeal of the Memorandum and Order, which affects no rights held by the Appellants.**

Section 1657(a) also directs the Court to "expedite the consideration of . . . any other action if good cause therefor is shown." 28 U.S.C. § 1657(a). "For purposes of [§ 1657(a)], 'good cause' is shown if a right under the Constitution of

4

the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a). Federal Rule of Appellate Procedure 2 similarly requires a showing of "good cause" by the Appellants and is consistent with § 1657(a). Fed. R. App. P. 2.

Even on the face of § 1367(a), Appellants make no claim to any "**right under the Constitution of the United States or a Federal Statute**[,]" and they do not argue any such right was affected by the Memorandum and Order. 28 U.S.C. § 1657(a).

Instead, the Appellants focus their Motion on the merits of their Appeal. Motion to Expedite Appeal, at 11–18. This puts the cart before the horse. The Appellants' argument on the merits without a claim to some "right under the Constitution of the United States or a Federal Statute" has no bearing on a "good cause" showing, which requires the Appellants to show that some "**right under the Constitution of the United States or a Federal Statute** . . . **would be maintained** in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a) (emphasis added).

Again, **the Appellants have not shown they will suffer any irreparable harm based upon the Memorandum and Order** (never mind one that would be safeguarded through expedited briefing, as opposed to standard briefing). Motion to Dismiss Appeal, at 16–22 (explaining the right to "just compensation" belongs to

the Appellees alone, and that the Appellants have already exercised their right to take the Appellants' property through eminent domain, which is not at issue in the case).

To the extent this Court seeks clarity on the "good cause" standard under 28 U.S.C. § 1657(a), the United States Court of International Trade has explained the relevant considerations succinctly:

> To determine whether "good cause" supports expediting briefing on this matter, the court applies the standard articulated in *Ontario Forest Industries Ass'n v. United States*, 30 CIT 1117, 444 F. Supp. 2d 1309 (2006). Drawing from legislative history, the court explained in that case that good cause exists: [1] in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, [2] in a case in which failure to expedite would result in extraordinary hardship to a litigant, or [3] actions where the public interest in enforcement of the statute is particularly strong.

*Eteros Technologies USA, Inc. v. United States*, 774 F. Supp. 3d 1358, 1360 (Ct. Int'l Trade 2025) (quoting *Ontario Forest Industries Ass'n*, 444 F. Supp. 2d at 1319 (Ct. Int'l Trade 2006) (quoting H.R. Rep. No. 98-985, at 6 (1984)).

1. **Whether this is "a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value" absent expedited briefing.**

On the first criterion, Appellants "make[ ] no allegation that adherence to a standard briefing schedule—as opposed to an expedited one—'would result in mootness or deprive the relief requested of much of its value.'" *Id.* (quoting *Ontario Forest Industries Ass'n*, 444 F. Supp. 2d at 1319).

6

The Appellants merely argue that "[t]he district court's errors present substantial issues on appeal and expedited treatment of that appeal is warranted so that the Superior Court may proceed with the statutory condemnation proceedings over which it has jurisdiction." Motion to Expedite Appeal, at 3. "**As presented, these are not time-sensitive harms that will become irremediable in the near future**." *Eteros Technologies USA*, 774 F. Supp. 3d at 1361 (emphasis added). *Contra* H.R. Rep. No. 98-985, at 6 n.7 (describing "a case relating to voting rights which would be mooted or partially mooted by an upcoming election").

Had the Appellants not yet conducted a Taking and claimed some immediate need to acquire Johnson's Pond, perhaps the Appellants' argument would have persuasive force. But where the Taking has been "completed," and the only remaining issue is "how much" the Appellees are owed for the Taking of their property, the right at issue is not the Appellants' right to expedite in this Court. Mem. & Order, ECF No. 60, at 29 ("In fact, Plaintiffs admit 'that the Taking of the Plaintiffs' Property has been *completed*, and therefore, the Plaintiffs are entitled to Just Compensation.'").

Whether the Appellants obtain a determination on their appeal of the Memorandum and Order in two weeks, two months, or two years from now changes nothing for Appellants beyond the ordinary expense and duration of the litigation (which the Appellants exacerbated by evading the District Court's jurisdiction). *FTC*

*v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

**2. Whether failing to order expedited briefing "would result in extraordinary hardship" to Appellants.**

Nor is this "a case in which failure to expedite would result in extraordinary hardship to a litigant." *Eteros Technologies USA*, 774 F. Supp. 3d at 1361. Again, the Appellants have suffered no harm whatsoever due to the Memorandum and Order, never mind an "extraordinary hardship," which carries an elevated burden under 28 U.S.C. § 1657(a). *Id.* at 1362 ("More importantly, Plaintiff does not show that the hardship it suffers during the pendency of this case, even if significant, is more severe than that suffered by an ordinary plaintiff who awaits possible relief. Initial unremediated harm, after all, is a necessary feature of all litigation in federal court: Article III jurisdiction requires (*inter alia*) that a plaintiff have suffered an injury in fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Even significant hardship that clears this threshold is not necessarily extraordinary.").

The only party to this action who has suffered "an injury in fact" is the Appellees, who have now gone 634 days without being paid any "just compensation," which they are owed under the United States Constitution. *See* Motion to Dismiss Appeal, at 20–22 (arguing for dismissal of the Appeal based upon lack of Article III standing). In the words of the late Judge Selya, it "beggars credulity" for the Appellants to argue that they are entitled to move to the front of

the line of appellants awaiting review from this Honorable Court—just so that if they win, the Appellants can rush back to the Superior Court and continue with their steadfast attempt to strip the Appellees of their inviolable, constitutional rights. *Contra* H.R. Rep. No. 98-985, at 6 n.8 (describing "a case challenging denial of disability benefits on which the plaintiff is dependent for subsistence" as a basis for extraordinary hardship).

### 3. The Appellants do not seek to enforce any Federal Statute "where the public interest in enforcement of the statute is particularly strong."

The only "good cause" criterion that this Appeal could possibly implicate would be "actions where the public interest in enforcement of the statute is particularly strong." *Eteros Technologies USA*, 774 F. Supp. 3d at 1361.

The Appellants generally assert that Rhode Island's statutory "framework reflects a legislative judgment that just-compensation questions arising from condemnations should be resolved through that statutory process, in the Superior Court, consistent with its timelines and procedures." Motion to Expedite Appeal, at 19. But Appellants miss the mark here as well.

First, in its reference to "the statute" in the legislative history underlying 28 U.S.C. § 1657(a), Congress is clearly referring to the "enforcement" of a "Federal Statute." 28 U.S.C. § 1657(a). The Appellants cannot rely upon Rhode Island statutes for their public interest argument to claim the benefits of 28 U.S.C. § 1657(a). *Id.* To the contrary, **the District Court actually served the public interest by enforcing**

**several federal statutes** (42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1651), through its Memorandum and Order, **which the Appellants are only frustrating through this Appeal**.

Second, as far as the public interest is concerned for purposes of Rhode Island's compensation scheme, any such service to the public interest relating to the Taking has been "completed" as far as the Appellants are concerned. Mem. & Order, ECF No. 60, at 29. Therefore, the purported interest of the Appellants (or even the government generally) in conducting eminent domain is not threatened by the Appellees, and that interest has not been affected by the Memorandum and Order. *Id.* at 16, 29. It cannot be stated that the public interest supports the Appellants' goal of avoiding paying the Appellees "just compensation" for the Taking. *Id.* at 30–32 (considering the public interest in the contest of *Burford* abstention).

Any public interest consideration strongly favors the Appellees—not the Appellants, who seek nothing else but to permanently deprive the Appellants of their fundamental constitutional right to "just compensation" in the District Court—a result that would shock the conscience of the Founders. *Chicago, Burlington & Quincy R. Co. v. Chicago*, 166 U.S. 226, 235 (1897) ("The requirement that the property shall not be taken for public use without just compensation is but 'an affirmance of a great doctrine established by the common law for the protection of private property. It is founded in natural equity, and is laid down as a principle of

10

universal law. Indeed, in a free government, almost all other rights would become worthless if the government possessed an uncontrollable power over the private fortune of every citizen.'").

To compound the matter, the Appellants' argument is premised upon an alleged requirement that Rhode Island Takings plaintiffs exhaust state compensation remedies—a requirement that has been overruled by the United States Supreme Court. *Knick*, 588 U.S. at 206 ("The state-litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government.").

Further, *Knick* and its predecessors lead to the necessary conclusion that the right to "just compensation" cannot be "discharged" by the Appellants' blind reliance upon a state statute. *Id.* at 192 (citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 321 (1987) ("'[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation.'"); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306 (1923) (relied upon by *Knick* and *First English*) (citing *Monongahela Navigation Co. v. United States*, 148 U. S. 312, 341 (1893) ("It is obvious that the owner's right to just compensation cannot be made to depend upon state statutory provisions.").

This Circuit reads *Knick* through the same lens. *In re Financial Oversight and Management Board*, 41 F.4th 29, 44 (1st Cir. 2022) (quoting *First English*, 482 U.S. at 315) ("Simply put, the Fifth Amendment contemplates a 'constitutional obligation to pay just compensation.'").

Given this lack of foundation for their Appeal, the Appellants cannot be permitted to brief this Appeal on their own terms, especially whereas if this Appeal proceeds to briefing, it is likely *amicus curiae* will seek to participate in support of the Appellees and the legitimate public interest in preserving fundamental constitutional rights.

**C. The Appellants' arguments on the merits are unsupported.**

The Appellants attempt to sway the Court to grant its suggested 42-day briefing schedule (which is less than half the time allowed for standard briefing) through a number of meritless arguments challenging the Memorandum and Order. While premature, Appellees address those briefly.

Under the All Writs Act, "Congress has provided '[t]he Supreme Court and all courts established by Act of Congress [with the authority to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004) (quoting 28 U.S.C. § 1651(a) and considering order in § 1983 case enjoining judgment of Supreme Court of Puerto Rico). "Acting pursuant to § 1651(a), a federal

court may issue an injunction as a means to preserve its jurisdiction." *Id.* Review of an injunction under the All Writs Act "is for abuse of discretion." *Id.* at 15 (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004))

**1. Section 1983 expressly authorized the District Court to enjoin the Superior Court.**

The District Court appropriately relied upon *Mitchum* in holding that the Anti-Injunction Act did not bar it from issuing the relief in its Order. Mem. & Order, ECF No. 60, at 13–15 (applying *Mitchum v. Foster*, 407 U.S. 225 (1972)).

First, the Appellants argue this was an error because of their belief that the underlying action was not a "suit in equity." Appellants' Motion for Expedited Appeal at 12–14. The Appellants cite no authority for their argument, which is archaic and belied by modern law.

"Under the Rules there is only one action—a 'civil action'—in which all claims may be joined and all remedies are available. Purely procedural impediments to the presentation of any issue by any party, based on the difference between law and equity, was destroyed." *Ross v. Bernhard*, 396 U.S. 531, 539–40 (1970) (referring to Federal Rule of Civil Procedure 2).

Therefore, the Appellees were not required to bring a special "suit in equity against the Defendants or the Superior Court" for the District Court to issue an injunction under the "expressly authorized" exception under § 1983 to the Anti-Injunction Act. Motion to Expedite Appeal, at 13.

Second, the Appellants place artificial weight upon the Appellees amending their Complaint to remove a prior claim for declaratory and injunctive relief seeking to invalidate the Taking. *Id.*

By foregoing this substantial right to challenge the validity of the Taking in the District Court, the Appellees in no way foreclosed the ability to move for injunctive relief to preserve the District Court's jurisdiction over their § 1983 claim for "just compensation" through a Motion seeking equitable relief "directly related to those claims and requests monetary relief." Mem. & Order, ECF No. 60, at 13. *See also Adair v. England*, 193 F. Supp. 2d 196, 200 (D.C. Cir. 2002) (citing *Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs*, 438 F.Supp. 876, 879–80 (S.D.N.Y. 1977)) ("When the motion is based on facts closely related to the facts in the complaint, however, the court may have jurisdiction to review a motion for preliminary relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a).").

Additionally, the Appellees continued to request "any other relief that the Court deems fair, equitable, and just" in connection with their § 1983 claims in the First Amended Complaint, as "expressly authorized" by the statute. Mem. & Order, ECF No. 60, at 13 ("The Court agrees with Plaintiffs that **a writ enjoining the state court proceedings would fall squarely under the "expressly authorized" exception** because **the FAC pleads a claim under § 1983**, the relief requested

14

includes "**[a]ny other relief that the Court deems fair, equitable, and just**," and they are seeking **a similar form of relief as the plaintiff in *Mitchum***.") (emphasis added).

Clearly possessing jurisdiction over the Appellees' § 1983 claims, and with the constitutional violation of the Taking being admitted, the District Court was legally authorized to enjoin the Superior Court "to preserve its jurisdiction" over those claims. *Rossello-Gonzalez*, 398 F.3d at 14–15 ("There is no doubt that the Rosselló complaint alleges the violation of a constitutionally guaranteed right, and thus, presents a colorable claim under § 1983 for subject-matter-jurisdiction purposes. . . . Having determined that the District Court could have exercised jurisdiction in this case, we must now inquire whether it should have intervened.").

Moreover, "[t]he hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." *Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 321 (1st Cir. 1989)) (*en banc*). "In all events, equity is more elastic than wooden—and flexibility seems particularly desirable in cases involving important private rights and public institutions." *Id.*

Given the legal authority to issue its writ, the Appellants do not argue that the District Court abused this discretion granting the equitable relief—nor could they, considering the Appellants were actively seeking to deprive the Appellees of their constitutional rights under those very § 1983 claims.

Beyond *Knick*'s plain holding, foundational United States Supreme Court precedent charged the District Court not just with the discretion—but a duty to act to preserve those claims:

> "The very essence of civil liberty," wrote Mr. Chief Justice Marshall in *Marbury v. Madison*, 5 U.S. 137, 163, 1 Cranch 137, 163, 2 L.Ed. 60 (1803), "certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." Traditionally, therefore, "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do." *Bell v. Hood*, 327 U.S., at 684, 66 S.Ct., at 777. . . .
>
> . . .
>
> "[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 245 (quoting *Bell*, 327 U.S at 684).

*Davis v. Passman*, 442 U.S. 228, 242 (1979).

Further, the District Court recognized "[t]he principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding[.]" Mem. & Order, ECF No. 60, at 15 (citing *Mitchum*, 407 U.S. at 407). Notably, "the test to be applied may be less stringent in civil cases than in criminal [cases][.]" *Cousins v. Wigoda*, 409 U.S. 1201, 1206 (1972).

The most frequent restraints applicable in such cases are based upon considerations that the federal plaintiff may "adequately vindicate their constitutional claims" in the state court. *Id.* But that is not an appropriate consideration where the Appellees brought their § 1983 claim for "just compensation" directly in the District Court. *Knick*, 588 U.S. at 191 ("The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983.").

Further, the United States Supreme Court contemplated federalist principles in *Knick* when it held that "[f]idelity to the Takings Clause and our cases construing it requires overruling *Williamson County* and restoring takings claims to the full-fledged constitutional status the Framers envisioned when they included the Clause among the other protections in the Bill of Rights." *Id.* at 189.

And because the Appellants continued to threaten the Appellees' ability to vindicate this constitutional right by attempting to "discharge" themselves from all liability for the Taking in the Superior Court, "federal injunctive relief against a state court proceeding" was "essential to prevent great, immediate, and irreparable loss of [Appellees'] constitutional rights." *Mitchum*, 407 U.S. at 242. Therefore, "[i]n the

17

instant case, principles of federalism not only do not preclude federal intervention, they compel it." *Steffel v. Thompson*, 415 U.S. 452, 472 (1972).

**2. The Order enjoining the Superior Court was "necessary in aid" of the District Court's jurisdiction.**

The Appellants also take issue with the District Court's reliance upon *James v. Bellotti*, 733 F.2d 989 (1st Cir. 1984) and *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) for finding an alternative ground to enjoin the Superior Court under the "necessary in aid of its jurisdiction" exception. Motion to Expedite Appeal, at 14–18.

But *James* and *Atlantic Coast Line* do not limit the "necessary in aid of its jurisdiction" exception to *in rem* actions. Mem. & Order, ECF No. 60, at 16 (quoting *James*, 733 F.2d at 993) ("True, but *James* goes on to explain that '[the necessary in aid of jurisdiction language] *is not necessarily limited to in rem actions*, however, and is meant to 'give sufficient flexibility that a federal court, as a court of equity, may, when it has jurisdiction deal adequately with the situation at hand.'"). In the face of *James*, the Appellants retreat to their "court of equity" argument, which the Appellees have already explained must be rejected. *See supra*, at 14–17.

Next, the Appellants suggest that even in light of *James*, the District Court enjoined the Superior Court merely because of convenience or a "free-floating 'inherent power' to halt the state case." Motion to Expedite Appeal, at 16–17.

Clearly, the District Court put more thought into its Memorandum and Order than Appellants give it credit for.

Contrary to the Appellants' contention that the Order enjoining the Superior Court was really about "claim and issue preclusion[,]" that is **not** what is stated in its Memorandum and Order. Mem. & Order, ECF No. 60, at 16–18 (explaining that Appellees' claim under § 24-1-8 became ripe and was filed in the District Court before the Town could act upon the issue of just compensation in the Superior Court).

To provide this Court greater context, the Appellants' Motion in the Superior Court seeking to "discharge" themselves from liability for the Taking is premised upon their contention that the Appellees somehow "waived" their claim under R.I. Gen. Laws § 24-1-8 by filing suit in the District Court. *See* Mot. for Injunctive & Declaratory Relief, ECF No. 45–1 Exhibit 2 (Town's Motion), at 1 ("Soscia's failure to initiate proceedings in the Superior Court challenging the taking and the compensation paid by the Town within the one-year time period to challenge the taking under § 24-1-8 likely forfeits and forever forecloses any right, claim, or action that it had to file a petition in the Superior Court challenging the taking and the compensation paid by the Town.").

Beyond the internal contradiction of the Appellants' argument, the Appellees certainly did not "waive" their supplemental claim under § 24-1-8 by including it in the present action under 28 U.S.C. § 1367(a), as they were so required under Circuit

19

precedent. *Kale v. Combined Ins. Co. v. America*, 924 F.2d 1161, 1165 (1st Cir. 1991) ("holding that when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists").

That claim under § 24-1-8 is held in abeyance in the District Court, where it continues to rest within its jurisdiction, and that claim cannot be "discharged" by Superior Court. *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) ("1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock").

Allowing the Superior Court to proceed on the Appellants' Motion—which sought to foreclose a prior pending claim in the District Court—directly interfered with the District Court's jurisdiction, 28 U.S.C. §§ 1331 and 1367(a), and was altogether barred by the Supremacy Clause. *See also* Mem. & Order, ECF No. 60, at 31 ("The Plaintiffs' constitutional claims are not pending before the Superior Court, and Defendants are similarly trying to prevent that Court from allowing Plaintiffs to proceed there under § 24-1-8 (even though they asserted that claim here within the allotted time period)).

The Order enjoining the Superior Court under the All Writs Act was necessary for the District Court to preserve its jurisdiction over the Appellees' claims. *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (quoting *Price v. Johnston*, 334 U.S. 266, 282

(1948)) ("This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law.'"). *See also Mitchum*, 407 U.S. at 242 ("And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights."); *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2nd Cir. 1985) (citing *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977)) ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction.").

Viewing the circumstances *in toto*, the Motion filed by the Appellants seeking an *ex parte*, unripe adjudication of their own concerning the same issue already raised by the Appellees in the District Court amounted to nothing more than forum shopping. As opined by the Seventh Circuit, "[l]itigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court, have the potential 'to seriously impair the federal court's flexibility and authority to decide that case.'" *Winkley v. Eli Lilly Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996) (citing *Atlantic Coast Line R.R.*, 398 U.S. at 295).

For these reasons, enjoining the Superior Court proceeding was "necessary in aid" of the District Court's jurisdiction and was not an abuse of discretion. *See id.* (quoting *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9 (1940)) ("Indeed, although an injunction is extraordinary relief, where such abuses exist, failure to issue an injunction may create the very 'needless friction between state and federal courts' which the Anti–Injunction Act was designed to prevent."); *Amalgamated Sugar Co. v. NL Industries*, 825 F.2d 634, 639 (2d Cir. 1987), *cert. denied*, 484 U.S. 992 (1987) ("While the policy underlying the Anti-Injunction Act is avoidance of 'disharmony between federal and state systems, the exception in [§] 2283 reflects congressional recognition that injunctions may sometimes be necessary in order to avoid that disharmony.").

## <u>CONCLUSION</u>

The Appellants' Motion should be denied in the event this Court determines that it has jurisdiction to hear this Appeal. The only proceedings that should be expedited are those in the District Court, which have been delayed by the Appellants for over nine (9) months. If necessary, the Appellees will seek the appropriate order to facilitate such.

*[SIGNATURE BLOCK AND CERTIFICATES TO FOLLOW]*

*Respectfully submitted*,

**SOSCIA HOLDINGS, LLC;
STRUCTURES AT JOHNSON'S POND, LLC;
BOATING AT JOHNSON'S POND, LLC;
WATERFRONT AT JOHNSON'S POND, LLC;
COMMON AREA AT JOHNSON'S POND,
LLC; and LAND AT JOHNSON'S POND, LLC**

*By their attorneys,*

/s/ *Michael A. Kelly*_____
Michael A. Kelly, Esq. (#24155)
Scott D. Levesque, Esq. (#83557)
Gregory S. Estabrooks, Esq. (R.I. Bar #10713, *admission to First Circuit pending*)
**KSPR LAW, P.C.**
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel. (401) 490-7334
mkelly@ksprlaw.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) of 5,200 words, because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f), this document contains 5,167 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Michael A. Kelly, Esq.*
Michael A. Kelly, Esq. (#24155)
**KSPR Law, P.C.**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that pursuant to Fed. R. App. P. 25, on March 24, 2026, a copy of the foregoing *Objection to Motion to Expedite Appeal* was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. The document is available for viewing and downloading from the ECF system.

John Tarantino, Esq., Nicole Benjamin, Esq. and Lucas Spremulli, Esq.
Adler Pollock & Sheehan, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
jtarantino@apslaw.com
nbenjamin@apslaw.com
lspremulli@apslaw.com

J. Richard Ratcliffe, Esq.
Ratcliffe Harten Galamaga, LLP
40 Westminster Street, 7th Floor
Providence, RI 02903
rratcliffe@rhgllp.com

Michael T. Eskey, Esq. & Jennifer Sylvia, Esq.
Moses Ryan, Ltd.
40 Westminster Street, 9th Floor
Providence, RI 02903
teskey@marlawri.com
jsylvia@marlawri.com

Marc DeSisto, Esq. & Kathleen Daniels, Esq.
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
marc@desistolaw.com
kathleen@desistolaw.com

*/s/ Michael A. Kelly, Esq.*
Michael A. Kelly, Esq. (#24155)
**KSPR LAW, P.C.**
